1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  PETRO SNEGIREV,                          CASE NO. C12-1606MJP

11                    Petitioner,            ORDER ADOPTING REPORT AND
                                             RECOMMENDATION AND
12        v.                                 GRANTING PETITION FOR WRIT
                                             OF HABEAS CORPUS
13  NATHALIE ASHER, ICE Field Office
    Director,

14                    Respondent.

15

16

17          This matter comes before the Court on Respondent's Objections to Magistrate Judge

18  Donohue's Report and Recommendation recommending the Court grant Petitioner's habeas

    petition and order Respondent to provide Petitioner a bond hearing.  Having reviewed the

19  Objections (Dkt. No. 18), the Report and Recommendation (Dkt. No. 17), and the remaining

20  record, the Court hereby ADOPTS the Report and Recommendation and GRANTS the petition

21  for a writ of habeas corpus.

22  /

23  /

24

ORDER ADOPTING REPORT AND
RECOMMENDATION AND GRANTING
PETITION FOR WRIT OF HABEAS CORPUS- 1

**Background**

The issue in this case is whether the mandatory detention provision, INA § 236(c), 8 U.S.C. § 1226(a), covers aliens who have been placed in immigration detention years after being released from state custody.  This Court has previously held that it does not.  See Castillo v. ICE Field Office Director, Case No. C12-502MJP, Dkt. No. 21 (W.D. Wash. 2012).

Petitioner Petro Snegirev is a native and citizen of Brazil who first became a lawful permanent resident of the United States on September 24, 1967.  (Dkt No. 17 at 2.)  Petitioner has a checkered criminal past.  (See AR L131, L260.)  The record indicates Petitioner has convictions for possession of a controlled substance in 1997 and 2001; driving with a suspended license in 1991, 2001, and 2004; and failure to appear in 2000 and 2001.  (Id.)  The record also indicates Petitioner was convicted for delivery of a controlled substance on June 9, 2006, for which he was sentenced to thirty days in jail.  (AR L260.)

Section 236(c) of the INA empowers the Attorney General to "take into custody any alien who . . . is deportable [from the United States] by reason of having committed any offense covered in [INA § 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)] of this title."  INA § 236(c)(1)(B); 8 U.S.C. § 1226(c)(1)(B).  Here, the Department of Homeland Security ("DHS") charged Petitioner with being removable from the United States under INA § 237(a)(2)(A)(iii), which provides for removal of an alien who has been convicted of an aggravated felony, and under INA § 237(a)(2)(B)(i), which provides for removal of an alien who has been convicted of an offense relating to a controlled substance. (Dkt. No. 17 at 2.)  DHS took Petitioner into custody on July 20, 2012, outside his home in Salem, Oregon.  (AR L131.)  Nothing in the record suggests Petitioner has been convicted of a removable crime or been in state custody since 2006, six years before DHS picked up Petitioner from his residence.  (AR L260.)  United States Immigration and

ORDER ADOPTING REPORT AND
RECOMMENDATION AND GRANTING
PETITION FOR WRIT OF HABEAS CORPUS- 2

1  Customs Enforcement ("ICE") currently holds petitioner in immigration detention without bond

2  pursuant to INA § 236(c), 8 U.S.C. § 1226(c).  (Dkt. No. 17 at 2-3.)

3       On August 23, 2012, Petitioner unsuccessfully applied for a bond redetermination

4  hearing.  (Id.)  At the redetermination hearing, the immigration judge refused to establish a bond

5  amount, concluding that she had no jurisdiction because Petitioner was subject to mandatory

6  detention.  (Dkt. No. 17 at 3.)  On September 18, 2012, Petitioner filed the instant petition for

7  habeas corpus, pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his continued

8  immigration detention.  (Dkt. No. 17 at 3.)

9       In his Report and Recommendation, Magistrate Judge Donohue concluded that Petitioner

10  is not subject to mandatory detention under INA § 236(c), because Petitioner was not taken into

11  immigration custody "'when the alien is released' from incarceration on the underlying offense."

12  (Dkt. No. 17 at 11 (citing 8 U.S.C. § 1226(c)).) Therefore, he concluded, Petitioner's detention is

13  governed by INA § 236(a), which authorizes the immigration judge to release him on bond if

14  Petitioner is neither a flight risk nor a danger to the community.  (Id.)  Respondent makes three

15  arguments in its Objections: (1) the Supreme Court has rejected the argument that the mandatory

16  detention provision of INA § 236(c) is an unconstitutional violation of the Due Process Clause,

17  (2) the legislative history of 8 U.S.C. § 1226 supports an interpretation that permits mandatory

18  detention regardless of when an alien is taken into immigration custody, and (3) granting

19  Petitioner a bond hearing wrongly sanctions the government for not complying with the statute.

20  **Discussion**

21  1.  Due Process

22       Respondent incorrectly reads Magistrate Judge Donahue's observation that Petitioner

23  seeks due process as a finding that the mandatory detention provision, INA § 236(c), 8 U.S.C. §

24

1   1226(c)(1), violates the Due Process Clause.  Respondent then urges the Court to consider the

2   Supreme Court's holding in <u>Demore v. Kim</u>, 528 U.S. 510 (2003). (Dkt. No. 18 at 2-3.) But

3   Magistrate Judge Donohue made no such finding.  The Report and Recommendation does not

4   suggest that INA § 236(c) violates the Due Process Clause.  (Dkt. No. 17 at 10.)  Instead,

5   Magistrate Judge Donohue simply quotes this Court's opinion in <u>Castillo v. ICE Field Office

6   Director</u>, Case No. C12-502MJP, Dkt. No. 21 (W.D. Wash. 2012), which uses the language of

7   due process to frame the relief Petitioner seeks: a bond hearing. (<u>Id.</u>)

8       2.  <u>Legislative History</u>

9           Respondent next argues that the legislative history of 8 U.S.C. § 1226(c) demonstrates

10  that Congress intended for it to stretch beyond its plain meaning and authorize mandatory

11  detention anytime after an alien is released from state custody.  (Dkt. No. 18 at 4.) But there is

12  little in the legislative history that supports such a conclusion.

13          The First Circuit analyzed the legislative history of 8 U.S.C. § 1226(c) in <u>Saysana v.

14  Gillen</u> and found that "the government's effort to make § 1226(c)(1) 'ambiguous' is strained."

15  590 F.3d 7, 16 (1st Cir. 2009). In explaining the 1996 amendments to 8 U.S.C. § 1226(c), the

16  legislature stated that mandatory detention was meant to apply "whenever such an alien is

17  released from imprisonment, regardless of the circumstances of the release."  House Conf. Rpt.

18  No. 104-828 at 210-11 (Sept. 24, 1996). This Court has previously interpreted that comment as

19  an attempt by Congress to "thwart arguments by aliens that because they were subject to parole

20  or other community supervision they could not be taken into immediate immigration detention

21  because that would result in a violation of their imposed conditions."  <u>Quezada-Bucio</u>, 317 F.

22  Supp.2d 1221, 1230 (W.D. Wash 2004).  But, here, Petitioner does not assert that he cannot be

23  taken into custody because he is already on parole.  (Dkt. No. 1.)  Neither parole nor any other

24

ORDER ADOPTING REPORT AND
RECOMMENDATION AND GRANTING
PETITION FOR WRIT OF HABEAS CORPUS- 4

1   kind of custody is at issue here because Petitioner had been living as a free man for over six

2   years.  (AR L260.)

3         In Saysana, the First Circuit also noted that the manner in which the legislature adopted

4   the 1996 amendments to 8 U.S.C. § 1226(c) indicates Congress did not intend "when" to mean

5   "after." 590 F.3d at 17 n.6. The First Circuit explained, "Although Congress clearly expressed

6   concern about aliens who had committed qualifying offenses, it declined to begin immediately

7   prospective application of the detention provisions to aliens with releases after enactment, let

8   alone retrospective application to aliens with prior releases." Id. The First Circuit also noted that,

9   in passing the 1996 amendments to 8 U.S.C. § 1226(c), "Congress was no doubt aware that,

10  under some circumstances, aliens with criminal histories that predate the passage of [the

11  amendments] remain eligible for forms of relief not available to aliens with more recent criminal

12  convictions." Id. at 17.  The First Circuit concluded that the legislative history of U.S.C. §

13  1226(c) shows that Congress chose to create a "limited system of mandatory detention," not a

14  broad system that would sweep in individuals who have been living peacefully in their

15  communities for many years. Id.

16     3.   Sanctioning the Agency

17        Respondent last argues that adopting the Report and Recommendation amounts to

18  sanctioning the government for failing to meet a deadline.  (Dkt. No. 18 at 6.)  Respondent relies

19  on the Fourth Circuit's decision in Hosh v. Lucero, 680 F. 3d 375, 381 (4th Cir. 2012) ("if a

20  statute does not specify a consequence for noncompliance with statutory timing provisions, the

21  federal courts will not in the ordinary course impose their own coercive sanction"). However, the

22  Supreme Court cases cited by the Fourth Circuit in Hosh do not support the finding that requiring

23  ICE to provide Petitioner a bond hearing is a "sanction." Hosh, 680 F.3d at 380-82, (citing

24

ORDER ADOPTING REPORT AND
RECOMMENDATION AND GRANTING
PETITION FOR WRIT OF HABEAS CORPUS- 5

United States v. James Daniel Good Real Prop., 510 U.S. 43, 63 (1993); United States v.
Montalvo-Murillo, 495 U.S. 711, 713-14 (1990); Barnhart v. Peabody Coal Co., 537 U.S. 149,
161 (2003)).

The present case is distinguishable from Montalvo-Murillo because that case involved the
Supreme Court's reluctance to set criminals free due to minor procedural defects, while here,
Petitioner, who has been a permanent resident of this country for more than forty-five years, had
been living in the community as a free man for more than six years before being taken into civil
custody.  495 U.S. at 716-17; (AR L260.)  Also, unlike in Montalvo-Murillo, the prisoner here
would only be given a bond hearing, not automatically released.  495 U.S. at 716-17; (Dkt. No.
17 at 11.)  Respondent will have an opportunity to argue that Petitioner should be denied bond
because he is a flight risk or a danger to the community.  8 U.S.C. § 1226(a).  Even if Petitioner
is granted bond, DHS will continue removal proceedings and Petitioner may eventually be
deported.

The Supreme Court's decision in James Daniel Good Real Prop. also does not support
Respondent's argument in the present case, because that case arose in the unique context of civil
forfeiture law. 510 U.S. 43 (1993). In that case, the Supreme Court declined to order dismissal of
a civil forfeiture action solely because the government failed to comply with a statutory deadline.
Id. at 63-66. As the Supreme Court has explained, the law of civil forfeiture evolved in response
to the practical "necessity of finding some source of compensation for injuries done by a vessel
whose responsible owners were often half a world away and beyond the reach of the law and its
processes."  Bennis v. Michigan, 516 U.S. 442, 473 (1996) (citing Harmony v. United States, 2
How. 210 (1844)). Unlike in the civil forfeiture context, there is no practical necessity preventing
Respondent from providing Petitioner a bond hearing.

ORDER ADOPTING REPORT AND
RECOMMENDATION AND GRANTING
PETITION FOR WRIT OF HABEAS CORPUS- 6

1    Lastly, granting the instant habeas petition is not a "sanction," because Respondent

2 retains the authority to act, albeit under a different statutory provision.  Unlike in <u>Barnhart v.</u>

3 <u>Peabody Coal Co.</u>, where the Supreme Court declined to sanction the Commissioner of Social

4 Security by divesting him of the authority to make untimely assignments, granting Petitioner's

5 petition here would not divest Respondent of the authority to detain Petitioner. 537 U.S. at 161.

6 The basis for authority would simply switch from § 1226(c) to § 1226(a).  Respondent cannot

7 argue that the Report and Recommendation would strip it of authority when, in fact, it would

8 retain authority to detain Petitioner.

9              **Conclusion**

10    Because Petitioner was not taken into custody when released, he is entitled to a bond

11 redetermination hearing under 8 U.S.C. § 1226(a).  The Court ADOPTS the Report and

12 Recommendation and GRANTS Petitioner's petition for writ of habeas corpus.  The clerk is

13 ordered to provide copies of this order to all counsel.

14    Dated this 9th day of March, 2013.

15

16

17              _Marsha J. Pechman_

18              Marsha J. Pechman
                United States District Judge

19

20

21

22

23

24